

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Texas Unemployment Compensation Commission
Brown Building
Austin, Texas

Gentlemen:

Opinion No. O-2858
Re: Are the persons contracting with the general partnership under the contract attached hereto in the employment of the law firm.

We have the request of the Honorable Orville S. Carpenter, former Chairman and Executive Director, of the Texas Unemployment Compensation Commission, for an opinion of this Department upon the status under the Unemployment Compensation Act of the parties contracting with the X and Y Law Firm.

We call your attention to the fact that the material attached to the letter of request concerned five different lawyers; however, we were furnished with photostat copies of the contracts with only two of these individuals. We, therefore, confine this opinion to the expression of the relationship existing between the X and Y Law Firm and the so-called partners A and B.

We will first consider the contract with the individual A. This is a contract executed between the X and Y Law Firm general partners and with another lawyer under which the general partners agree to furnish the necessary operating capital, law library, furniture, fixtures, typewriters, adding machines, and general office equipment as, in the opinion of the general partner, based upon past experience, is reasonably necessary to carry on and operate a general law business in the City of Fort Worth, Texas, the firm to be known as X and Y.

Texas Unemployment Compensation Commission, page 2

The special partner agrees to diligently devote his professional time and skill to such legal matters, of the general partner and associated special partners, as may receive his attention and to pay over to the joint bookkeeping of the general partner and associated special partners all fees and charges received and collected by him in connection therewith.

"3. It is mutually agreed that Special Partner shall be entitled to receive, as his share of, and interest in, the special partnership herein and hereby created, the following amounts, which shall constitute payment to him, in full, for his entire interest in the current earnings and business of the special partnership herein formed:

"Ten per cent of the net cash profits earned and received by General Partner and all associated special partners engaged in the general practice of law under the firm name of 'X and Y'; such net profits to be determined, at the end of each calendar year during the term of this special partnership agreement by subtracting from the gross legal fees, salaries and retainers actually collected during each calendar year of this special partnership agreement, the aggregate amount of operating expenses; which, among other items, shall include salaries paid to stenographers, bookkeeper, file clerk, telephone operator, janitor, and other similar employees, rent, light and heat, if these three items are paid, stationery and office supplies, unrefunded telephone and telegraph expense and charges, stamps, taxes, bad debts, miscellaneous expenses and donations, of the same general character which General partner has heretofore included in miscellaneous expense and donation accounts, and all amounts received by other associated Special Partners.

"In determining the net earnings of General Partner and associated partners, in which Special Partner herein named shall share, to the extent hereinbefore set out, there shall be excluded from the gross annual expense of General Partner, the cost of all books, constituting a part of the permanent law library of General Partner; also, all furniture,

fixtures, typewriters and general office equipment, all of which are now, and will continue to be the sole property of General Partner; and Special Partner shall not have any right, title or interest therein, nor in and to the capital supplied by General Partner with which to operate the business of said law firm.

"6. It is mutually agreed General Partner shall be the exclusive judge of the general policies of said partnership firm of X and Y, and that General Partner shall have exclusive charge, control and supervision of office details, office management, bookkeeping and accounting, filing, purchase of office stationery and supplies, the hiring and discharge, and the fixing of salaries, hours and regulations governing stenographers, bookkeeper, file clerk, telephone operator, janitor, and other similar employees; and, with respect to all such matters General Partner shall not be expected or required to consult with, or secure the consent of Special Partner, who hereby ratifies, approves and confirms all that General Partner may do in such matters.

"7. The special partnership herein formed shall be automatically dissolved by the death of either X or Y, two of the General Partners, or by the death of Special Partner, with whom this agreement is made; or it may be terminated at the election of either General Partner or Special Partner, by the one so electing to terminate giving thirty days' previous notice to the other; and, at the end of said thirty day period, this Special Partnership Agreement shall in all respects be terminated, and Special Partner shall be entitled to his share, as hereinbefore set out, of the net earnings of General Partner and all associated Special Partners up to the date of the termination of this partnership agreement, but no longer. It is further mutually agreed that no consideration will be given or allowance made to Special Partner, upon the termination of this Special Partnership Agreement on account of any uncollected legal fees, salaries and retainers, or to charges or earnings, on any

Texas Unemployment Compensation Commission, page 4

unfinished legal business, which have not then been actually collected; it being the intention of General Partner and Special Partner to limit and restrict, and they do hereby agree to limit and restrict Special Partner's share and interest, at the time of the termination of this Special Partnership Agreement, to the actual cash fees, salaries and retainers collected up to the time of such dissolution, but not thereafter, except in the following instance: Special Partner's percentage, hereinbefore set out and defined, shall be applicable to that portion of any legal fee of $5,000.00, or more, collected within six months from the date this Special Partnership Agreement terminates on legal business on hand thirty days prior thereto, which the period, from the time the business comes into the office up to the time of the termination of this Agreement, bears to the total period of time during which said business was handled; for instance, if the particular piece of business came into the office six months prior to the termination of this Agreement, and was concluded six months thereafter, then one-half of the fee collected therefrom, under the conditions named, would be applicable to Special Partner's percentage, the other one-half not.

"This Special Partnership Agreement shall be effective as of January 1, 1938, and shall continue until dissolved in the manner above set out.

"WITNESS THE HANDS OF THE CONTRACTING PARTIES, this _____ day of April, A. D. 1938.

_____
General Partner

_____
Special Partner"

A consideration of this and the contract executed with B discloses a slight difference in the two contracts; consequently, we will dispose of the contract with A, the substance of which is heretofore set out.

Texas Unemployment Compensation Commission, page 5

We have in Texas a general partnership, and what we term a limited or special partnership organized under the provisions of Articles 6110 to 6132 of the Vernon's Revised Civil Statutes of 1925.

The material transmitted to us with your letter of request does not disclose that the statutes of Texas have been complied with in respect to the formation of a limited partnership.

Article 6117, Revised Civil Statutes, reads as follows:

"No such partnership shall be deemed to have been formed until a certificate shall have been made, acknowledged, filed and recorded, nor until an affidavit shall have been filed as above directed; and if any false statement be made in such certificate or affidavit, all the persons interested in such partnership shall be liable for all the engagements thereof as general partners."

If such a certificate has been made and recorded, we do not have that information. From the terms of the contract, it appears to be one that does not meet the provisions that are deemed necessary by the Legislature in enacting the statute pertaining to such partnership. The legislature has thought it necessary to make these requirements for the protection of the public in dealing with limited partnerships. Apparently, these contracting partners have sought to enter into an agreement for the mutual benefit of each, but with strict limitations upon the interest of the so-called special partner without giving the public notice of these limitations. We do not purport to say that attorneys may not enter into a special partnership; however, we do find that Texas Jurisprudence, Volume 32, page 588 in the notes indicates a doubt that such a relationship may be created.

Article 5221b, 17 (g) (1) reads as follows:

"'Employment' subject to the other provisions of this subsection, means service, including service in interstate commerce, performed for wages or under any contract of hire, written or oral, express or implied, provided that any services performed by an individual for wages shall be deemed

to be employment subject to this Act unless and until it is shown to the satisfaction of the Commission that such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact."

Article 5221b-17(o) reads as follows:

"(o) 'Wages' means all remuneration payable for personal services, including commissions and bonuses and the cash value of all remuneration payable in any medium other than cash. Gratuities customarily received by an individual in the course of his employment from persons other than his employing unit shall be treated as wages payable by his employing unit. The reasonable cash value of remuneration payable by his employing unit. The reasonable cash value of remuneration payable in any medium other than cash, and the reasonable amount of gratuities, shall be estimated and determined in accordance with rules prescribed by the Commission."

We are not asked to determine if the law firm is civilly liable for the acts of A and B, but if under the facts they are in employment under our definition of the term.

It is not necessary that all partners contribute capital but they may contribute services. However, persons may contribute to an enterprise, but if they own no interest in the business they are not partners. Schlesinger vs. Kennerly, 41 S. W. (2d) 1002. In 32 Tex. Juris., Section 20, page 245, we find the statement that a community of ownership and in profits or earnings as well as in a business name is necessary to a partnership. Citing English vs. Mills, 299 S. W. 342.

In this instance the general partners have agreed to furnish the capital, but they have not given A any ownership in the capital contributed or any power of control.

In 32 Tex. Juris., page 247, there is the statement that no partnership is created if the agreement is really to serve a superior for compensation and without any general share in interest or control, though compensation is dependent

on the making of profits and consists in a share of them. Citing many Texas cases.

The case of Buzard vs. Bank of Greenville, 2 S. W. 54, an opinion of the Supreme Court by Judge Gaines is one of our first cases on the subject. It held that an arrangement whereby a formerly salaried agent who worked for a share of the expected profits as compensation for his services and who would not be compensated if there should be losses was not a partnership but an agency.

In Murray Ginning System Company vs. Exchange National Bank, 61 S. W. 508, the manager of a gin contracted to take charge of a gin with a salary for all year, but a share in the earnings during the season - all equipment was furnished by the original owner; this was held an agency.

Patently, the general partners have given A none of the control of the firm's business. At the termination of the contract A has no ownership or interest in the fees receivable even though the business was acquired and work done after the time of his contract except in the fees of over $5,000.00 collected if, as, and when provided by the contract.

We fail to find the existence of the necessary elements of a partnership between X and Y law firm and A. He seems to be serving for a percentage of certain profits with no control or ownership of the capital or of the business of the firm.

The contract between the general partners X and Y, a law firm doing business as X and Y and B the so-called "special partner" is as follows:

> "This SPECIAL PARTNERSHIP AGREEMENT, entered into between X and Y, a partnership firm, engaged in the general practice of law, in Fort Worth, Texas, hereinafter, for convenience, referred to as "General Partner" and B, an attorney at law of Fort Worth, Texas, hereinafter referred to, for convenience, as "Special Partner," is to
> W I T N E S S E T H:

Texas Unemployment Compensation Commission, page 8

"1.   General Partner agrees to furnish, for the
use of General Partner and associated Special
Partners, practicing law under the firm name of
X & Y, at Fort Worth, Texas, such necessary
operating capital, law library, furniture, fix-
tures, typewriters, adding machines, and general
office equipment, as, in the opinion of General
Partner, based upon past experience, is reasonably
necessary to carry on and operate a general law
business in the City of Fort Worth, Texas.

"2.   Special Partner agrees to diligently devote
his professional time and skill to such legal
matters, of General Partner and associated Special
Partners, as may receive his attention, and to
pay over to the joint bookkeeper of General Part-
ner and associated Special Partners, all fees
and charges received and collected by him in con-
nection therewith.

"3.   It is mutually agreed that Special Partner
shall be entitled to receive, as his share of,
and interest in, the special partnership herein
and hereby created, the following amounts, which
shall constitute payment to him, in full, for his
entire interest in the current earnings and busi-
ness of the special partnership herein formed.

"(a) -5- per cent of the net cash profits earned
and received by General Partner and all associated
special partners engaged in the general practice
of law under the firm name of "X and Y"; such net
profits to be determined, at the end of each
calendar year during the term of this special
partnership agreement by subtracting from the
gross legal fees, salaries and retainers actually
collected during each calendar year of this special
partnership agreement, the aggregate amount of
operating expenses; which, among other items, shall
include salaries paid to stenographers, bookkeeper,
file clerk, telephone operator, janitor, and other
similar employees, rent, light and heat, if these

three items are paid, stationery and office supplies, unrefunded telephone and telegraph expense and charges, stamps, taxes, bad debts, miscellaneous expenses and donations, of the same general character which General Partner has heretofore included in miscellaneous expense and donation accounts, together with the sum of One Hundred Twenty-five Dollars ($125.00) per month, being the estimated and agreed depreciation sustained by General Partner on law library, furniture, fixtures, and office equipment belonging exclusively to General Partner.

"In determining the net earnings of General Partner and associated partners, in which Special Partner herein named shall share, to the extent hereinbefore set out, there shall be excluded from the gross annual expense of General Partner, the cost of all books, constituting a part of the permanent law library of General Partner; also, all furniture, fixtures, typewriters and general office equipment, all of which are now, and will continue to be the sole property of General Partner; and Special Partner shall not have any right, title or interest therein, nor in and to the capital supplied by General Partner with which to operate the business of said law firm.

"(b) General Partner guarantees to Special Partner that his share, as hereinbefore set out, of the net profits of General Partner and associated Special Partners, during each twelve months' period that this contract of special partnership shall continue, shall not be less than $5,000.00 and, General Partner agrees to advance to Special Partner this guaranteed minimum amount of $5,000.00 in twelve (12) equal sums, payable monthly. At the end of each calendar year, if Special Partner's share in the net profits, as hereinbefore defined, of the joint venture, shall be more than $5,000.00 (the minimum annual guaranteed amount) General Partner agrees to pay the amount of the excess to Special Partner; but if the share of Special Partner shall be less than the minimum annual guaranteed amount of $5,000.00 then it is mutually agreed that said minimum annual guaranteed amount shall constitute payment in full for the interest and share

of Special Partner during such calendar year in question.

"4. It is contemplated that General Partner will, from time to time, enter into additional special partnership agreements with other attorneys, now and hereafter associated with General Partner in the general practice of law, under the firm name of X and Y, in Fort Worth, Texas; and may, from time to time, change and amend same; and, with respect to all such special partnership agreements and amendments thereto, it is mutually agreed that General Partner shall have and possess at all times the full right and authority to enter into and make as many additional special partnership agreements, changes and amendments thereto, as General Partner may consider to the best interest of said firm of X & Y, and upon such terms and conditions as General partner and any special partner may mutually agree upon; and, the termination of a special partnership agreement with one special partner shall not, in any way, involve or effect a special partnership agreement with other special partners; each special partnership agreement being independent of and separate and distinct from the others.

"5. It is mutually agreed that the legal fees, salaries, and retainers collected by General Partner and associated Special Partners, doing business under the firm name of X & Y, in the City of Fort Worth, Texas, shall not include any commissions, allowances or payments, earned or received by any one of the general partners, or by any one of the Special Partners, for acting as Administrator, Executor, or Trustee of an estate or under a will, or under a trust instrument; but fees and allowances paid to and received by any of the General or Special Partners for acting as trustee in bankruptcy, attorney for trustee in bankruptcy, receiver, or as attorney for the receiver, appointed by either the State or Federal Courts, shall be considered a legal fee, and included in the gross earnings of General and associated Special Partners.

"6. It is mutually agreed General Partner shall be the exclusive judge of the general policies of

Texas Unemployment Compensation Commission, page 11

said partnership firm of X & Y, and that General Partner shall have exclusive charge, control and supervision of office details, office management, bookkeeping and accounting, filing, purchase of office stationary and supplies, the hiring and discharge, and the fixing of salaries, hours and regulations governing stenographers, bookkeeper, file clerk, telephone operator, janitor, and other similar employees; and, with respect to all such matters General Partner shall not be expected, or required to consult with, or secure the consent of Special Partner, who hereby ratifies, approves and confirms all that General Partner may do in such matters.

"7. The following is of the essence of this contract: Due to the fact that one or more of the special partnerships entered into by General Partner may be terminated from time to time, on account of a Special Partner either desiring to enter the practice of law by himself or to join another firm of attorneys, General Partner considers it highly desirable to retain and treat as confidential the receipts and disbursements of the firm of X & Y, composed of General Partner and associated Special Partners; and, Special Partner, named in this agreement, having confidence in the fairness, honesty and integrity of General Partner, does hereby agree, bind and obligate himself to accept, at all times during the continuance of this special partnership, and at its dissolution, the statement of General Partner as to the amount of money which represents the share of Special Partner in the net earnings of said firm of X & Y; and, it shall never be necessary or required of General Partner that an itemized statement of receipts or earnings be given to Special Partner, either during the period of the operation of this agreement, or at its termination, and a certificate, under oath, if required by the bookkeeper of X & Y that the amount due and owing to Special Partner as and for his share, as hereinbefore set out, shall be conclusive and binding upon him, his heirs, assigns and legal representatives.

"8. The special partnership herein formed shall be automatically dissolved by the death of eith

Texas Unemployment Compensation Commission, page 12

Y or X, two of the General Partners, or by the death of Special Partner, with whom this agreement is made; or it may be terminated at the election of either General Partner or Special Partner, with whom this agreement is made; or it may be terminated at the election of either General Partner or Special Partner, by the one so electing to terminate giving thirty days' notice to the other; and, at the end of said thirty day period, this Special Partnership Agreement shall in all respects be terminated, and Special Partner shall be entitled to his share, as hereinbefore set out, of the net earnings of General Partner and all associated Special Partners up to the date of the termination of this partnership agreement, but no longer. It is further mutually agreed that no consideration will be given or allowance made to Special Partner, upon the termination of this Special Partnership Agreement on account of any uncollected legal fees, salaries and retainers, or to charges or earnings, on any unfinished legal business, which have not then been actually collected; it being the intention of General Partner and Special Partner to limit and restrict, and they do hereby agree to limit and restrict Special Partner's share and interest, at the time of the termination of this Special Partnership Agreement, to the actual cash fees, salaries and retainers collected up to the time of such dissolution, but not thereafter.

"This Special Partnership Agreement shall be effective as of January 1, 1938, and shall continue until dissolved in the manner above set out.

"WITNESS THE HANDS OF THE CONTRACTING PARTIES, this 26th day of April, 1938.

_____
General Partner

_____
Special Partner

Story on Partnership, 4th Ed., Sec. 2, had defined a partnership to be:

> "A voluntary contract between two or more competent persons to place their money, effects, labor, and skill, or some or all of them, in lawful commerce or business, with the understanding that there shall be a communion of the profits thereof between them."

The contracts disclose that the general partners may take in or contract with other special partners without consulting A or B. One of the most important elements of partnership is the delectus personarum — the right to choose one's own partner. A partner's right to object to the admission of a new partner is not a matter of contract right which can be bargained away but exists as a fundamental right of a partner.

These so-called special partners have merely contracted to perform personal services for compensation which our law defines as "wages" or remuneration for personal services.

It is noticeable that the general partners specifically withheld the power to fix the policies of the firm giving these associates no voice or control of the union they have formed.

Paragraph (b) of the contract with B guarantees him a yearly compensation of $5,000.00 payable in twelve equal sums. He has no claim for any other amount of money if the net earnings, as defined by the contract, do not reach a figure that would bring him more on a computation of 5% of the net earnings. He has no right to ask for an accounting of the receipts and disbursements. He contributes services, but no capital nor is he permitted to acquire any interest in the property of the partnership. At the minute of the expiration of his contract with X and Y, he has no interest whatever in any uncollected fees or retainers. The firm is as free of him, under the contract, as they would be of any employee.

In conclusion we wish to quote from Story on Partnerships, 4th Ed., Section 49, the following:

Texas Unemployment Compensation Commission, page 14

". . . where one party is stripped of the powers and rights of a partner, and clothed only with the more limited powers and rights of an agent, it seems harsh, if not unreasonable, to crowd upon him the duties and responsibilities of a partner, which he has never assumed, and for which he has no reciprocity of reward or interest. It has, therefore, been well said by Mr. Chancellor Kent, in his learned Commentaries, that 'to be a partner, one must have such an interest in the profits, as will entitle him to an account, and give him a specific lien or preference in payment over other creditors. There is a distinction between a stipulation for a compensation for labor proportioned to the profits, which does not make a person a partner; and a stipulation for an interest in such profits which entitles the party to an account, as a partner.' And Mr. Collyer has given the same doctrine in equally expressive terms, when he says, that in order to constitute a communion of profits between the parties, which shall make them partners, the interest in the profits must be mutual; that is, each person must have a specific interest in the profits, as a principal trader."

The contracts submitted fail to satisfy these tests.

We are of the opinion that A and B are not partners but are in the employment of the law firm of X and Y.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Morris Hodges*.

Morris Hodges
Assistant

APPROVED DEC 20, 1940

FIRST ASSISTANT
MH:N    ATTORNEY GENERAL

APPROVED
OPINION
COMMITTEE
BY _____
CHAIRMAN